# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| JOE OLINICK, | § | |
| On behalf of himself and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 6:11-cv-71 |
| vs. | § | |
| | § | Jury Trial Demanded |
| FULTON, FRIEDMAN & | § | |
| GULLACE, LLP, | § | |
| CYNTHIA FULTON, | § | |
| ENCORE CAPITAL GROUP, INC., | § | |
| MIDLAND FUNDING, LLC, and | § | |
| MIDLAND CREDIT | § | |
| MANAGEMENT, INC. | § | |
| | § | |
| Defendants, | § | |

## ORIGINAL CLASS ACTION COMPLAINT

### NATURE OF ACTION

1.     This is a class action brought under the federal Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq*., and the Texas Debt Collection Practices

Act, Tex. Fin. Code, Chapter 392.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C. § 1692k(d), 28 U.S.C.

§1331, and 28 U.S.C. §1367.

3.     Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this district, and where Defendants transact business in this State and this district.

## PARTIES

4.     Plaintiff, Joe Olinick ("Plaintiff"), is natural person who at all relevant times resided in the State of Texas, County of McLennan.

5.     Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, Midland Funding LLC – and once owed or due, or asserted to be owed or due, Aspire Visa.

6.     Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due Midland Funding LLC, arises from a transaction or transactions in which the money, property, insurance, goods and/or services that are the subject of the transaction(s) were incurred primarily for personal, family, or household purposes (i.e groceries and gasoline).

7.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3), and Tex. Fin. Code Ann. § 392.001(1).

8.     Defendant, Fulton, Friedman & Gullace, LLP ("Fulton, Friedman & Gullace"), is an entity who at all relevant times was engaged, by use of the mails

and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5), and Tex. Fin. Code Ann. § 392.001(2).

9.     Fulton, Friedman & Gullace maintains offices only in the state of New York (500 First Federal Plaza, Rochester, New York 14614), and in the state of Arizona (2345 E. Thomas Rd, Suit 460, Phoenix, AZ 85016).

10.     Fulton, Friedman & Gullace is registered with the Texas Secretary of State, as a third-party debt collector – pursuant to Tex. Fin. Code Ann. § 392.101 – under the name "Fulton Friedman & Gullace LLP."

11.     Fulton, Friedman & Gullace is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code Ann. § 392.001(6).

12.     Defendant, Cynthia Fulton ("Fulton"), is an individual who at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5), and Tex. Fin. Code Ann. § 392.001(2).

13.     Fulton, at all relevant times, was personally involved in the collection of the debt at issue.

14.     Fulton, at all relevant times, materially participated in Fulton, Friedman & Gullace's debt collection activities – through direct management of Fulton, Friedman & Gullace, by occupying positions of critical importance to Fulton, Friedman & Gullace, or otherwise.

15.   Fulton, at all relevant times, exercised control over the affairs of Fulton, Friedman & Gullace.

16.   Fulton, at all relevant times, played a significant role in designing and implementing Fulton, Friedman & Gullace's debt collection policy and procedure.

17.   Fulton is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code Ann. § 392.001(6).

18.   Defendant, Encore Capital Group, Inc. ("Encore") is a publicly traded Delaware corporation with principal executive offices situated at 8875 Aero Drive, Suite 200, San Diego, California.

19.   Encore's common-stock is registered pursuant to Section 12(b) of the Securities and Exchange Act of 1934 and is listed on the NASDAQ Global Select Market under the symbol "ECPG."

20.   Encore, at all relevant times, was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5), and Tex. Fin. Code Ann. § 392.001(2).

21.   Encore is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code Ann. § 392.001(6).

22.   Defendant, Midland Funding, LLC ("Midland Funding"), is a Delaware corporation, with its principal place of business in San Diego, California.

23.   Midland Funding is a wholly owned subsidiary of Encore.

4

24.     Midland Funding is in the business of taking title to and collecting delinquent debts originally owed to third parties.

25.     Midland Funding, at all relevant times, was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5), and Tex. Fin. Code Ann. § 392.001(2).

26.     Midland Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code Ann. § 392.001(6).

27.     Defendant, Midland Credit Management, Inc. ("Midland Credit Management"), is a Kansas corporation with its principal place of business in San Diego, California.

28.     Midland Credit Management is a wholly owned subsidiary of Encore.

29.     Midland Credit Management, at all relevant times, was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5), and Tex. Fin. Code Ann. § 392.001(2).

30.     Midland Credit Management is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code Ann. § 392.001(6).

31.     Fulton, Friedman & Gullace, Fulton, Encore, Midland Funding, and Midland Credit Management acted jointly and in concert to collect a debt from Plaintiff, and generally act jointly and in concert to collect consumer debts incurred primarily for personal, family or household purposes.

## FACTUAL ALLEGATIONS

### Encore – A Debt Buyer

32.    Encore purchases deeply discounted charged-off consumer receivable portfolios from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios, and  manages their collection through its subsidiary entities.

33.    From its inception through June 30, 2009, Encore invested approximately $1.3 billion to acquire 27 million consumer accounts with a face value of approximately $43 billion.

34.    During the three months ending September 30, 2010, Encore purchased receivable portfolios with a face value of $2.6 billion for $77.9 million, or a purchase cost of 3.0% of face value.  Encore's estimated future collections at acquisition for these portfolios amounted to $166.2 million.

35.    Encore raises capital to acquire portfolios of accounts at deep discounts from their face value using a sophisticated valuation process that is based on the attributes of the underlying accounts.

36.    Encore enters into Credit Agreements with third party financial lending institutions such as JPMorgan Chase Bank, N.A., Bank of America, N.A., Morgan Stanley Bank, N.A., and Citibank, N.A., pursuant to which revolving loans are made to Encore from time to time.

37.     Once a receivable portfolio has been identified for potential purchase, Encore prepares quantitative analyses based on extracting customer level data from external sources, other than the issuer, to analyze the potential collectibility of the portfolio.   Encore also analyzes the portfolio by comparing it to similar portfolios previously acquired and serviced by Encore and its subsidiaries.

38.     Members of Encore's senior management, including key officers, materially control and participate in the acquisition and collection of portfolios of charged-off consumer receivables.

39.     Members of Encore's management perform qualitative analyses of other matters affecting the value of portfolios, including a review of the delinquency, charge off, placement and recovery policies of the originator as well as the collection authority granted by the originator to any third party collection agencies, and, if possible, by reviewing their recovery efforts on the particular portfolio.

40.     After these evaluations are completed, Encore's Investment Committee, comprised of various members of our senior management, discusses the findings, and decides whether to purchase and finalizes the price at which to purchase the portfolio.

41.     Title to the purchased portfolios is taken and held by Encore's indirect subsidiaries such as MRC Receivables Corporation, NCC-2 Corp., or Midland Funding – debt owning companies within the Encore family.

### Encore – A Debt Collector

42.     Encore employs a "dynamic collections approach" under which it re-analyzes all of its accounts once each quarter with refreshed external data, which it supplements with information gleaned from its own collection efforts.   Encore modifies its collection method for each account if warranted.

43.     Encore's proprietary consumer level collectability analysis is the primary determinant of whether an account is actively worked post-purchase. Throughout Encore's ownership period, it continuously refines this analysis to determine the most effective collection strategy to pursue for each account.  These strategies consist of:

- Outbound calling, driven by proprietary predictive software, by our own collection workforce located at our three domestic call centers and an international call center, through a majority-owned joint venture, in India;
- Use of a nationwide network of collection attorneys to pursue legal action where appropriate;
- Use of multiple third party collection agencies;
- Direct mail campaigns coordinated by in-house marketing group;
- Transfer of accounts to a credit card provider, generating a payment; and
- Sale of accounts where appropriate.

44.     Once receivables are ready to be worked, members of the Information Technology Department work directly with the head of Operations to discuss the specifics of the recent acquisition.  These discussions are useful because they allow the Information Technology Department to tailor Encore's proprietary account management system to reflect any special characteristics of the portfolio and Encore's collection strategy.

45.     Pursuant to a Servicing Agreement for which Encore companies are party to, Midland Credit Management – a "servicer" company – is responsible for managing and servicing the collection of the debts owned by Encore's debt owning entities such as MRC, NCC-2 Corp., or Midland Funding.

46.     The Servicing Agreement grants Midland Credit Management significant power and authority to conduct and manage the collection of the accounts to which MRC, NCC-2 Corp., or Midland Funding hold title, including, without limitation, the commencement of legal proceedings in Midland Funding's name to collect accounts.

### Encore – An Outsource Debt Collector

47.     Encore's outsourced legal collections channel is comprised of more than 75 vendor relationships, delivers over $250 million in annual collections, and is supported by approximately 50 team members.

48.     Pursuant to certain written Collection Agreements between Midland Credit Management and various law firms, Encore generally outsources the collection of accounts where it appears the debtor is able, but is unwilling to pay. The process is managed by Encore's Legal Outsourcing Department.

49.     Pursuant to the Collection Agreements, Encore places accounts with firms such as Fulton, Friedman & Gullace.

50.     The Collection Agreements control the manner in which firms such as Fulton, Friedman & Gullace must conduct collection activities on behalf of Midland Credit Management in connection with the accounts owned by MRC, NCC-2 Corp., or Midland Funding.

51.     The Collection Agreements require firms such as Fulton, Friedman & Gullace to abide by, and conduct all of their activities in a manner consistent with the then current "Procedures," which the Collection Agreements define as "the Midland Account Handling Procedures" – modified by Midland Credit Management from time-to-time in its sole and absolute discretion.

52.     The Collection Agreements contain bilateral indemnification provisions that allocate financial liability arising out of the collection efforts of firms such as Fulton, Friedman & Gullace.

53.     The   Collection   Agreements   provide   for   Midland   Credit Management's exercise of material control over each aspect of the collection efforts of firms such as Fulton, Friedman & Gullace.

54.     The Collection Agreements confer upon Midland Credit Management the right to conduct audits without notice at the expense of firms such as Fulton, Friedman & Gullace.

55.     The Collection Agreements require firm such as Fulton, Friedman & Gullace to obtain and provide proof of insurance policies to Midland Credit Management.

56.     The Collection Agreements require firms such as Fulton, Friedman & Gullace to name Midland Credit Management as loss payee in such policies.

57.     The   Collection   Agreements   contain   stringent   daily   reporting requirements pursuant to which firms such as Fulton, Friedman & Gullace must make daily reports consisting of all information regarding any activity that occurs during that work day on any account placed with the firms, including but not limited to, communications or attempted communications between the firms and consumers and/or others.

58.     The Collection Agreements mandate that firms such as Fulton, Friedman & Gullace utilize Midland Credit Management's Daily Invoicing Report, as part of its confirmation process relating to the successful upload of activity and

payments, to confirm that those amounts the firms believe were transmitted to Midland Credit Management were received by Midland Credit Management as part of each daily upload.

59.     The Collection Agreements direct that firms such as Fulton, Friedman & Gullace must maintain or acquire technology and resources sufficient to communicate and transmit and receive data with Midland Credit Management in connection with the accounts placed with the firms.

60.     Midland Credit Management issues user IDs and passwords to the firms such as Fulton, Friedman & Gullace for the purpose of providing access to Midland Credit Management's website and computer collections software and its information databases.

61.     The Collection Agreements require firms such as Fulton, Friedman & Gullace to maintain true, complete and accurate records, instruments, agreements, correspondence and other documentation, irrespective of the medium held, received or generated for a period of seven (7) years on all matters and activities: (i) related to or arising in connection with each account; and (ii) arising out of or relating to the Collection Agreements.

62.     Midland Credit Management has created a "Legal Outsourcing Firm Training Manual," which it provides to firms such as Fulton, Friedman & Gullace – which collect debts pursuant to the Collection Agreements.

63.    Encore manages and exercises control over each aspect of the collection process including legal outsourcing.

64.    Encore's management is responsible for setting the strategic direction, managing all legal outsourcing operations and personnel, driving process improvements, managing the P&L, and ensuring that Encore's suppliers/vendors are competitive.

65.    Encore's Head of Legal Outsourcing oversees all Legal Outsourcing teams across the company, providing essential leadership and staff development consistent with overall company objectives and goals.

66.    Through Midland Credit Management, Encore advances to firms such as Fulton, Friedman & Gullace certain out-of-pocket court costs such as filing fees. Encore capitalizes these costs in its consolidated financial statements.

67.    Encore pays a fee to firms such as Fulton, Friedman & Gullace based on an established fee schedule, as further defined in the Collection Agreements executed by the firms and Midland Credit Management on Encore's behalf.

**Fulton, Friedman & Gullace – A Debt Collector On Behalf of Encore**.

68.    On or about March 24, 2010, at or about 3:55 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> Hello, this is a very important message only for Joseph
> Olinick.  This is not a sales or marketing phone call.  To
> retrieve your very important message press the 9 key now
> or call us back at 866-563-0809.  Thank you.

69.     On or about March 24, 2010, at or about 7:43 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> We are sorry to disturb you.  This message was intended
> to be received only by an answering machine.  Thank
> you.

70.     On or about March 25, 2010, at or about 5:19 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> Hello, this is a very important message only for Joseph
> Olinick.  This is not a sales or marketing phone call.  To
> retrieve your very important message press the 9 key now
> or call us back at 866-563-0809.  Thank you.

71.     On or about March 26, 2010, at or about 12:22 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> Hello, this is a very important message only for Joseph
> Olinick.  This is not a sales or marketing phone call.  To

> retrieve your very important message press the 9 key now
> or call us back at 866-563-0809.  Thank you.

72.     On or about March 29, 2010, at or about 3:34 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> Hello, this is a very important message only for Joseph
> Olinick.  This is not a sales or marketing phone call.  To
> retrieve your very important message press the 9 key now
> or call us back at 866-563-0809.  Thank you.

73.     On or about September 17, 2010, at or about 4:25 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick.  Please be advised that this an
> attempt to collect a debt and any information obtained
> will be used for that purpose.  Please return this call
> regarding an important business matter.  We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

74.     On or about September 21, 2010, at or about 1:51 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for [silence].  If you are not [silence], please hang up or disconnect.  If you are [silence], please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message, you acknowledge you are [silence].  Please be advised that this an attempt to collect a debt and any information obtained will be used for that purpose.  Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number [silence].

75.     On or about September 27, 2010, at or about 8:17 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect. If you are Joseph Olinick, please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message, you acknowledge you are Joseph Olinick.  Please be advised that this an attempt to collect a debt and any information obtained will be used for that purpose.  Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

76.     On or about September 29, 2010, at or about 3:00 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to

deliver the following message:

> This is a message for Joseph Olinick.  If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick.  Please be advised that this an
> attempt to collect a debt and any information obtained
> will be used for that purpose.  Please return this call
> regarding an important business matter.  We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

77.    On or about October 4, 2010, at or about 2:27 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick.   If you are not
> Joseph Olinick, please hang up or disconnect.  If you are
> Joseph Olinick please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message you acknowledge
> you are Joseph Olinick.  Please be advised this is an
> attempt to collect a debt and any information obtained
> will be used for that purpose. Please return this call
> regarding  an important  business  matter.   We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

78.    On or about October 14, 2010, at or about 4:28 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick. If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message. Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick. Please be advised that this an
> attempt to collect a debt and any information obtained
> will be used for that purpose. Please return this call
> regarding an important business matter. We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

     79.    On or about October 19, 2010, at or about 2:45 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick. If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message. Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick. Please be advised that this an
> attempt to collect a debt and any information obtained
> will be used for that purpose. Please return this call
> regarding an important business matter. We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

     80.    On or about October 23, 2010, at or about 9:11 a.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick.  If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick.  Please be advised that this an
> attempt to collect a debt and any information obtained
> will be used for that purpose.  Please return this call
> regarding an important business matter.  We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

81.    On or about October 26, 2010, at or about 5:15 p.m., Fulton, Friedman

& Gullace knowingly and willfully initiated a telephone call to Plaintiff's

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick.   If you are not
> Joseph Olinick, please hang up or disconnect.  If you are
> Joseph Olinick please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message you acknowledge
> you are Joseph Olinick.  Please be advised this is an
> attempt to collect a debt and any information obtained
> will be used for that purpose.  Please return this call
> regarding an important business matter.  We can be
> reached at 800-869-2331 and refer to the FFG number
> 131496.

82.    On or about November 1, 2010, at or about 8:09 a.m., Fulton,

Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect. If you are Joseph Olinick, please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message, you acknowledge you are Joseph Olinick.  Please be advised that this an attempt to collect a debt and any information obtained will be used for that purpose.  Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

83.    On or about November 5, 2010, at or about 1:56 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.   If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding  an important  business  matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

84.    On or about November 9, 2010, at or about 4:59 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

85.    On or about November 15, 2010, at or about 5:15 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

86.    On or about November 22, 2010, at or about 8:16 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

87.    On or about November 29, 2010, at or about 11:29 a.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

88.    On or about December 7, 2010, at or about 10:50 a.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.   If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

89.    On or about December 10, 2010, at or about 2:29 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.   If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

90.    On or about December 17, 2010, at or about 12:00 a.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

91.     On or about December 20, 2010, at or about 7:06 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.  If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message. There will be a brief pause in this message.  Thank you. By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

92.     On or about December 23, 2010, at or about 9:54 a.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to

Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for [silence].  If you are not [silence], please hang up or disconnect.  If you are [silence], please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message, you acknowledge you are [silence].  Please be advised that this an attempt to collect a debt and any information obtained will be used for that purpose.  Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number [silence].

93.     On or about December 28, 2010, at or about 11:36 a.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's residential telephone number using an artificial or prerecorded voice to deliver the following message:

> This is a message for Joseph Olinick.   If you are not Joseph Olinick, please hang up or disconnect.  If you are Joseph Olinick please continue to listen to this message.  There will be a brief pause in this message.  Thank you.  By continuing to listen to this message you acknowledge you are Joseph Olinick.  Please be advised this is an attempt to collect a debt and any information obtained will be used for that purpose. Please return this call regarding an important business matter.  We can be reached at 800-869-2331 and refer to the FFG number 131496.

94.     On or about January 20, 2011, at or about 2:39 p.m., Fulton, Friedman & Gullace knowingly and willfully initiated a telephone call to Plaintiff's

25

residential telephone number using an artificial or prerecorded voice to deliver the

following message:

> This is a message for Joseph Olinick.  If you are not
> Joseph Olinick, please hang up or disconnect. If you are
> Joseph Olinick, please continue to listen to this message.
> There will be a brief pause in this message.  Thank you.
> By continuing to listen to this message, you acknowledge
> you are Joseph Olinick.  Please be advised that this is
> Fulton, Friedman and Gallace, attorneys in the practice of
> debt collection.  This is an attempt to collect a debt and
> any information obtained will be used for that purpose.
> Please return this call regarding an important business
> matter. We can be reached toll free at 800-869-2331.
> Thank you.

95.    Fulton, Friedman & Gullace, as a matter of pattern and practice,
leaves voice messages/voice recordings with and/or for alleged consumer debtors
using language substantially similar or materially identical to that utilized by
Fulton, Friedman & Gullace in leaving voice messages/voice recordings with
and/or for Plaintiff on or about March 24, 2010 (at or about 3:55 p.m.), March 25,
2010, March 26, 2010, and March 29, 2010.

96.    Fulton, Friedman & Gullace, as a matter of pattern and practice,
leaves voice messages/voice recordings with and/or for alleged consumer debtors
using language substantially similar or materially identical to that utilized by
Fulton, Friedman & Gullace in leaving voice messages/voice recordings with
and/or for Plaintiff on or about March 4, 2010 (at or about 7:43 p.m.).

26

97.     Fulton, Friedman & Gullace, as a matter of pattern and practice, leaves voice messages/voice recordings with and/or for alleged consumer debtors using language substantially similar or materially identical to that utilized by Fulton, Friedman & Gullace in leaving voice messages/voice recordings with and/or for Plaintiff on or about September 17, 2010, September 21, 2010, September 27, 2010, September 29, 2010, October 4, 2010, October 14, 2010, October 19, 2010, October 23, 2010, October 26, 2010, November 1, 2010, November 5, 2010, November 9, 2010, November 15, 2010, November 22, 2010, November 29, 2010, December 7, 2010, December 10, 2010, December 17, 2010, December 20, 2010, December 23, 2010, and December 28, 2010.

## CLASS ACTION ALLEGATIONS

98.     Plaintiff brings this action on behalf of himself and all others similarly situated.  Specifically, Plaintiff seeks to represent a class of individuals defined by three distinct subclasses of individuals:

> All persons located in the state of Texas who, within one year before the date of this complaint, received a voice message/voice recording from Fulton, Friedman & Gullace in connection with an attempt to collect any consumer debt, where the voice message/voice recording was substantially similar or materially identical to the voice messages/voice recordings delivered to Plaintiff on or about March 24, 2010 (at or about 3:55 p.m.), March 25, 2010, March 26, 2010, and March 29, 2010.

All persons located in the state of Texas who, within one year before the date of this complaint, received a voice message/voice recording from Fulton, Friedman & Gullace in connection with an attempt to collect any consumer debt, where the voice message/voice recording was substantially similar or materially identical to the voice messages/voice recordings delivered to Plaintiff on or about March 24, 2010 (at or about 7:43 p.m.).

All persons located in the state of Texas who, within one year before the date of this complaint, received a voice message/voice recording from Fulton, Friedman & Gullace in connection with an attempt to collect any consumer debt, where the voice message/voice recording was substantially similar or materially identical to the voice messages/voice recordings delivered to Plaintiff on or about September 17, 2010, September 21, 2010, September 27, 2010, September 29, 2010, October 4, 2010, October 14, 2010, October 19, 2010, October 23, 2010, October 26, 2010, November 1, 2010, November 5, 2010, November 9, 2010, November 15, 2010, November 22, 2010, November 29, 2010, December 7, 2010, December 10, 2010, December 17, 2010, December 20, 2010, December 23, 2010, and December 28, 2010.

99.   The proposed class specifically excludes the United States of America, the state of the Texas, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Fifth Circuit, and the Justices of the United States Supreme Court, all officers and agents of Defendants and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

100.   The class is averred to be so numerous that joinder of members is impracticable.

101.   The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

102.   The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendants.

103.   There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented.  These common questions of law and fact predominate over questions that may affect individual class members.  Such issues include, but are not limited to: (a) the existence of Defendants' identical conduct particular to the matters at issue; (b) Defendant's violations of the federal Fair Debt Collection Practices Act, the Texas Debt Collection Practices Act, and the Texas Deceptive Trade Practices Act; (c) the availability of statutory penalties; and (d) attorney's fees and costs.

104.   The claims of Plaintiff are typical of those of the class he seeks to represent.

105.   The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure, on the part of Defendants.  Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

106.   Plaintiff possesses the same interests and has suffered the same injuries as each class member.   Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

107.   Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

108.   Plaintiff is willing and prepared to serve this Court and proposed class.

109.   The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

110.   Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

111.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B).   The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

112.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class.   Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

113.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

114.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

115.   Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have interest in prosecuting and controlling separate individual actions; (c) the concentration of

litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I

116. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 115.

117. 15 U.S.C. § 1692d(6) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *     *     *
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

118. Defendant violated 15 U.S.C. § 1692d(6) by failing to provide meaningful disclosure of their identity when placing telephone calls to Plaintiff.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b. Adjudging that Defendants violated 15 U.S.C. § 1692d(6).

c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member.

d.  Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f.  Awarding such other and further relief as the Court may deem just and proper.

## COUNT II

119.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 118.

120.  15 U.S.C. § 1692e(11) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*       *       *

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if

33

the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

121.  Defendants violated 15 U.S.C. § 1692e(11) by failing to disclose during communications with Plaintiff that the communications were from a debt collector.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that Defendants violated 15 U.S.C. § 1692e(11).

c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member.

d.  Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f. Awarding such other and further relief as the Court may deem just and proper.

## COUNT III

122. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 121.

123. Tex. Fin. Code Ann. § 392.302 provides:

In debt collection, a debt collector may not oppress, harass, or abuse a person by:

\*       \*       \*

(2) placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number.

124. Defendants violated Tex. Fin. Code Ann. § 392.302 by placing telephone calls to Plaintiff without disclosing the name of the individual making the call with the intent to annoy, harass, or threaten Plaintiff.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal

Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that Defendant violated  Tex. Fin. Code Ann. § 392.302;

c.  Awarding Plaintiff, and all those similarly situated, injunctive relief, pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

d.  Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f.  Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

125.  Plaintiff is entitled to and hereby demands a trial by jury.

Respectfully submitted,

By: /s/ Dennis R. Kurz
Dennis R. Kurz
Texas State Bar # 24068183
Attorney in Charge for Plaintiff

WEISBERG & MEYERS, L.L.C.
Two Allen Center
1200 Smith Street
16th Floor
Houston, TX 77002
(888) 595-9111 ext. 412
(866) 842-3303 (fax)


## <u>CERTIFICATE  OF SERVICE</u>


I certify that on March 23, 2011, I electronically filed the foregoing document with the clerk of the U.S. District Court, Western District of Texas, Waco Division, using the electronic case filing system of the court.

/s/ Dennis R. Kurz
Dennis R. Kurz
